UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                    Case No.: 18-14821-LMI

WILL ZAMORA,                                      Chapter 13

      Debtor.

_____/

CREDITOR TIMOTHY MOSLEY'S COMBINED RESPONSE TO
THE DEBTOR'S MOTION FOR A PROTECTIVE ORDER [ECF 26]
AND SUPPLEMENT TO HIS MAY 30, 2018 EMERGENCY OBJECTION TO
THE DEBTOR'S NOTICE OF VOLUNTARY DISMISSAL
AND MOTION TO CONVERT CASE TO CHAPTER 7 [ECF 20]

      Creditor Timothy Mosley ("Mosley") submits his combined Response to the Debtor Will Zamora's (the "Debtor") Motion for a Protective Order [ECF 26] and Supplement to Mosley's May 30, 2018 Emergency Objection to the Debtor's Notice of Voluntary Dismissal and Motion to Convert Case to Chapter 7 [ECF 20].

      **I.**      **Timeline of Pertinent Events**

      On April 25, 2018, the Debtor filed this chapter 13 bankruptcy (the "Petition") [ECF 1]. The Debtor's filing consists of a "bare bones" seven-page Petition with no schedules or any other papers or filings. In response to Question #11 of his Petition, the Debtor fills in the box that he rents his residence, and also fills in the box that his landlord did *not* have an eviction judgment against him [ECF 21 at p. 3]. In fact, however, on April 17, 2018, the Miami-Dade Court entered an eviction judgment in favor of Mosley against the Debtor, obligating the Debtor to deposit $50,000 on or before April 20, 2018 into the registry of the court, and $30,000 per month in rent thereafter, or a writ of possession for the Debtor's eviction would be issued without a further hearing [ECF 8, Ex. C]. The Debtor failed to make any of these payments, so the Miami-Dade Court accordingly issued its writ of possession on April 24, 2018, which was served later that same day by the Sheriff [ECF 8, Ex. E]. Before the Sheriff could return the following day to enforce the writ of possession, the Debtor filed this chapter 13 on April 25, 2018. The Debtor immediately filed a suggestion of bankruptcy in Mosley's Miami-Dade eviction action, which

resulted in the Sheriff refusing to enforce the writ of possession without Mosley first obtaining an order of stay relief from this Court.

The Debtor's representation of no eviction judgment on the seven-page Petition is clearly false and misleading. In fact, it is a downright lie. The Debtor also discloses on his seven-page Petition that he has between $0 and $50,000 in assets, and between $0 and $50,000 in liabilities [ECF 1 at # 19, 20]. However, as demonstrated below, neither of these statements is true. Apart from the misrepresentations concerning the lack of any eviction judgment and the Debtor's assets and liabilities, no other information apart from the Debtor's name, address, and "Social Security number" is disclosed in the Petition. At no time since the filing of the Petition has the Debtor disclosed a single creditor or created any service or creditor matrix. To this day, only the Debtor's attorney, the standing chapter 13 trustee, and Mosley, on account of the Debtor filing a suggestion of bankruptcy in Mosley's eviction action (which caused Mosley to file an appearance in this bankruptcy to obtain stay relief), have received notices in this bankruptcy. All other creditors have been kept completely in the dark; presumably intentionally so.

The Debtor's representation to Question #10 of his Petition that he has not filed any bankruptcies in the last eight years is also woefully inaccurate. In his present Petition, the last four digits of the Debtor's Social Security number are listed as "9623." However, a "William Yanes Zamora" has filed *four* prior chapter 13 cases with this Court, all with the last four digits listed as "2396." The Debtor's driver license lists his middle name as "Yanes." It will come as no surprise to this Court that these four prior chapter 13 cases were *all* dismissed for the Debtor's failure to file *any* schedules. These are Case Nos. 14-30083-RAM, 11-22923-RAM, 09-11008-LMI, and 08-12574-AJC. *Two* of these cases were filed within the last eight years, making the Debtor's answer to Question #10 on the Petition also false. Inverting Social Security digits in this manner is a decades-old trick to avoid detection of a repeat filer by the clerk's office. This constitutes perjury and criminal activity by the Debtor far beyond failing to make a required disclosure on the Petition. All of this reflects the Debtor's cavalier attitude about the process and sanctity of this Court.

On April 26, 2018, the Clerk of Court issued a notice of incomplete filing to the Debtor requiring the Debtor to file all of his schedules, related papers, and plan on or before May 9, 2018 [ECF 3].

On April 30, 2018, Mosley filed his emergency motion for stay relief to enforce the writ of possession [ECF 8], which the Court set for a hearing to be held on May 8, 2018 [ECF 9], and which the Court granted on May 8, 2018, with the Order entered on May 10, 2018 [ECF 14].

On May 9, 2018, the Debtor filed a motion to extend the time to file his schedules, a proposed plan, and all other documents necessary for a chapter 13, representing that "[t]he Debtor is actively working on obtaining all documents needed to complete his schedules, statement of financial affairs, statement of current monthly income and chapter 13 plan." [ECF 12]. To date no schedules or any other related papers have been filed with this Court. There has been no disclosure of information to this Court about any of the Debtor's assets or liabilities. This is because the filing was never intended to be anything more than a measure to stop the eviction.

On May 16, 2018, the Court entered an Order in response to this Motion setting the deadline of June 9, 2018 for the Debtor to file all of his schedules and necessary papers, including a chapter 13 plan [ECF 18]. Again, no such schedules or papers have ever been filed; just like all of the prior cases identified above.

The deadline for the Debtor to vacate Mosley's house under the Court's stay relief order was May 25, 2018, which was upon the expiration of the 14 days from entry of the order affording Mosley stay relief. As this Court will recall, the parties had agreed not to ask the Court to waive the 14-days so as to afford the Debtor the opportunity to consummate a purchase of Mosley's house pursuant to a pre-existing sales contract for $2.8 million [ECF 8, Ex. A]. This was because the day before the stay relief hearing, the Debtor and his wife, through her attorney, Ms. Christiansen, provided Mosley with purported proof of $2.8 million in funds to close. *See* Exhibit "A."

Thereafter, during the 14 days after entry of the Court's stay relief Order, the Debtor, and counsel for his wife, strung Mosley along until the very last day with promises of the ability to close, constantly changing the terms of any purported deal, and then announced their inability to close the night before the final day to vacate. *See* Exhibit "B," though referencing Federal Rule of Evidence 408 only contains non-privileged email chain. Moreover, despite counsel for the Debtor's wife representing to Mosley's counsel on several occasions that the Debtor and his family would cooperate fully and be out of the house by the final day without any need for the Sheriff to enforce the writ of possession, *see* Exhibit "C," Mosley was forced to pay the Sheriff

3

to enforce the writ, which ultimately required five police officers and became a major ordeal spanning the course of *two full days*.

More specifically, when the Sheriff's deputies arrived at the house with Mosley's cousin on the afternoon of the 15th day (May 25, 2018), they encountered a slew of new luxury cars parked in front of the house. *See* Exhibit "D." No plans had been made by the Debtor or his wife to vacate the house, in fact they were barely packed. Though initially fully furnished with Mosley's items, the house was full of the personal effects of the Debtor and his family which were not ready to be removed. In fact, because the Debtor and his wife refused to open the door to the house, the Sheriff was forced to call the local police to assist in enforcing the writ of possession. Additionally, despite promises by counsel for the wife, the keys were never turned over to Mosley's representatives, nor was the gate code ever provided (all of which caused additional funds to be expended by Mosley).

The eviction process took approximately five hours on the first day, with attempted delays and resistance from the inhabitants who had to be threatened with arrest before they would begin to pack and leave. Thereafter, Mosley had to make arrangements on that Saturday May 26, 2018 to have people at the house in order to supervise the removal of remaining items. As this was Memorial Day weekend, every cost was further enlarged. Mosley's house and its grounds were left in a terrible state of damage, disrepair, and neglect. *See* Composite Exhibit "E."

Moreover, the house had been rented furnished and with maintenance being the responsibility of the Debtor [ECF 8, Ex. A]. It is important to note that multiple items of Mosley's property are damaged or missing. *See* Composite Exhibit "F." The inhabitants stated during the eviction that much of Mosley's missing items were in a warehouse owned by the Debtor (another asset not disclosed), but provided no details on their whereabouts. To date none of these missing items has been returned and no further information has been provided to Mosley by the Debtor or his counsel or the wife's counsel despite their being aware of these losses and having been warned at the stay relief hearing about these issues.

Five days after the stay relief hearing, and ten days before his schedules, related items, and chapter 13 plan were due under the Court's Order, on May 30, 2018, the Debtor filed his Notice of Voluntary Dismissal [ECF 19], to which Mosley filed an immediate and emergency

objection and motion to convert to a chapter 7 [ECF 20].  The Court set both matters for a hearing to be held on July 17, 2018 [ECF 21].

Two days later, on Friday, June 1, 2018, Mosley filed a Notice of Taking 2004 Examination Duces Tecum of the Debtor scheduled for July 9, 2018 [ECF 22], which was amended on Monday, June 4, 2018 to add a few additional documents [ECF 24].  On Monday, June 4, 2018, Mosley issued a document subpoena to EquityMax LLC [ECF 23], the entity in the letter which the Debtor had provided to Mosley showing purported proof of $2.8 million in funds to close, *see* Exhibit "A."  On June 4, 2018, Mosley filed a proof of claim for $268,383.42, plus unliquidated sums, *see* Claim 1.  Mosley's proof of claim sets forth categories of damages for unpaid rent, stolen items, damaged items, damage to the house and grounds, and sums still due relating to the failed closing.

*Also* on Monday, June 4, 2018, the next business day after the original duces tecum deposition notice had been filed and served, and the same day the amended duces tecum was filed and served, the undersigned sent an email to Debtor's counsel offering to reschedule the Debtor's July 9, 2018 examination, if July 9 was not convenient.  *See* Exhibit "G."  Mosley requested alternative dates prior to the Court's July 17 hearing.  Having received no response, the undersigned re-forwarded that email on June 6, 2018 asking again for a response and an update from the Debtor.  *See* Exhibit "G."  No response was ever received.

Instead on June 7, 2018, the Debtor filed a motion for a protective order complaining about the Debtor's 2004 examination being unilaterally scheduled and claiming that neither the Debtor nor his counsel were available for *any* 2004 examination prior to the July 17, 2018 hearing, and further asking the Court to rule on the pending matters prior to any examination or document production [ECF 26].  For good measure, the Debtor also asked the Court to stay enforcement of the EquityMax LLC subpoena.  The undersigned reached out to see if at least the Debtor could produce the documents requested by Mosley prior to the July 17, 2018 hearing, even if the Debtor was truly unavailable for a deposition, or alternatively to postpone the July 17, 2018 hearing until after a document production and examination could be undertaken.  The Debtor has declined on both counts.  *See* Exhibit "H."  Rather, the Debtor seems intent on hiding all of this information in an attempt to hamstring Mosley's ability to pursue this motion and shield such information from this Court's review of the issues at hand.  This is totally contrary to the purpose of a bankruptcy which is for open and full information to be provided to all parties in

5

interest including the Court; clearly the Debtor thinks little of this process and his obligations as a debtor before this Court.

By way of further example, to that end, despite the Court's May 16, 2018 Order [ECF 18] setting the June 9, 2018 deadline to file schedules, all related papers, and a chapter 13 plan, the Debtor has filed *nothing* further with this Court. The Debtor has *simply ignored* this Court's orders, having no regard it would seem for the process; the Debtor has not even bothered to file a motion to excuse or to delay compliance with the Court's May 16, 2018 Order.  In fact, to date, there is still no matrix.  Such behavior is outrageous and may be emboldened by all of the prior filings wherein it seems the Debtor was allowed to utilize this Court as his personal device to stay litigation and avoid obligations on his own timetable without any repurcussion.

The Debtor now claims an absolute right to dismiss his chapter 13 upon demand and seeks to walk away from his chapter 13 case.

## II.    The Debtor Has No Absolute Right Of Dismissal Under § 1307(b).

Section 1307(b) of Title 11 provides in relevant part that "[o]n request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter."  Section 1307(c) of Title 11 permits the Court to convert a chapter 13 debtor's case to a chapter 7 for "cause," which includes bad faith.

While the traditional belief was that a chapter 13 debtor has an "absolute" right of dismissal, most courts—and one within this district—have held otherwise after the Supreme Court's ruling in *Marrama v. Citizens Banks of Mass.*, 549 U.S. 365 (2007), which held that despite ostensible text to the contrary in the Bankruptcy Code, the inherent requirement of good faith in every bankruptcy filing prevents a debtor from converting a chapter 7 to a chapter 13 if the bankruptcy court finds the filing was in bad faith.  *E.g. In re Letterese*, 397 B.R. 507, 512 (Bankr. S.D. Fla. 2008).  In *Letterese,* a debtor filed a chapter 13, with complete schedules, but filed a notice of voluntary dismissal three days before his § 341 meeting of creditors.  *Id*. at 510-11.  Two creditors immediately filed motions to set that dismissal aside and to convert the case to a chapter 7.  *Id*. at 510.

The bankruptcy court held a hearing on the matter, with the threshold issue being whether a chapter 13 debtor has an "absolute" right of dismissal under § 1307(b).  *Letterese*, 397 B.R. at 512.  The bankruptcy court found no "absolute" right exists, and with an evidentiary showing of bad faith, voluntary dismissal was denied and the case converted to a chapter 7 instead.  *Id*.  The

bankruptcy court reasoned that an inherent requirement of good faith exists in all chapter 13 cases, relying upon *Marrama* and *In re Kitchens*, 702 F.2d 885 (11th Cir. 1983). *Id*. "Courts which have considered the issue since the Supreme Court's ruling in *Marrama* have held that this requisite good faith conduct prevents a bad faith debtor in chapter 13 from having an absolute right to dismiss under section 1307(b)." *Id*. (citing *Rossom v. Fitzgerald*, 545 F.3d 764, 773 (9th Cir. 2008) (holding that [a]fter *Marrama*, "the debtor's right of voluntary dismissal under §1307(b) is <u>not absolute</u>, but is qualified by the authority of a bankruptcy court to deny dismissal on grounds of bad-faith conduct or to prevent an abuse of process." (emphasis added))).

The bulk of opinions after *Marrama* adopt the reasoning of *Rossom*, including the Fifth Circuit, holding no absolute right to dismiss a chapter 13 exists in the face of bad faith. *Jacobsen v. Moser (In re Jacobsen)*, 609 F.3d 647, 660 (5th Cir. 2010) ("We thereby reject a construction of the statute that would afford an abusive debtor an escape hatch . . . ."); *In re Caola*, 422 B.R. 13, 20-21 (Bankr. D.N.J. 2010) (bad faith prevents voluntary dismissal, but evidentiary hearing needed on existence of bad faith); *In re Armstrong*, 408 B.R. 559 (Bankr. E.D.N.Y. 2009) (absolute right to dismiss did not survive *Marrama*, but court must hear evidence on bad faith); *In re Norsworthy*, Case No. 05-15098-WHD, Bankr. N.D. Ga. May 27, 2009 (dismissal not an absolutely right after *Marrama*, evidentiary hearing required on request to convert to a chapter 7).

In addition, the Eleventh Circuit has previously addressed the role of good faith in chapter 13 bankruptcies in another context which is fully applicable here. "Congress intended to provide bankruptcy courts with a discretionary means to preserve the bankruptcy process for its intended purpose." *In re Waldron*, 785 F.2d 936, 941 (11th Cir. 1986). Thus, bankruptcy courts are entrusted with ensuring the integrity of the system itself: "[w]henever a Chapter 13 petition appears to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives . . . . The protections and forgiveness inherent in the bankruptcy laws surely require conduct consistent with the concepts of basic honesty. Good faith or basic honesty is the very antithesis of attempting to circumvent a legal obligation through a technicality of law." *Id*.

After *Marrama*, when faced with an objection to dismissal and a motion to convert to a chapter 7, the Court's inquiry is first, "whether the Debtor's conduct here was in sufficient bad

faith as to preclude him from voluntarily dismissing this chapter 13 case, and second, whether that conduct was in sufficient bad faith to justify conversion to chapter 7." *Letterese,* 397 B.R. at 512. A determination as to a debtor's "good faith" or lack thereof must be analyzed on a case-by-case basis upon a consideration of the totality of the circumstances. *Id.* (citing *Kitchens,* 702 F.2d at 888). The pertinent facts in *Letterese* were schedules reflecting lack of ordinary income because the income listed was aspirational, unusually high monthly expense, the refusal to acknowledge or address claimants holding final judgments, and the refusal to attend a § 341 meeting of creditors. *Id.* at 514. In *Rosson*, the Ninth Circuit affirmed the conversion to chapter 7 against a request to dismiss after the debtor delayed the chapter 13 proceedings long enough to diverted incoming estate funds and then refused to turn over those funds. 545 F.3d at 776-77. In *Jacobsen*, the Debtor's filing of inaccurate and misleading schedules, obscuring assets owned with a spouse, and not disclosing avoidable transfers were enough to deny dismissal and affirm conversion. 609 F.3d at 661.

And, again, the Eleventh Circuit's prior discussion of good faith in a chapter 13 is compelling in this case: "the petition must be filed with the honest intent and genuine desire to utilize the provisions [] for its intended purpose—to effectuate a corporate [sic] reorganization—and not merely as a device to serve sinister and unworthy purposes of the petitioner . . . . The court cannot and will not tolerate such misuse of the reorganization process." *Waldron*, 785 F.2d at 941. Further expounding: "the cornerstone of the bankruptcy courts has always been the doing of equity. The protections and forgiveness inherent in the bankruptcy laws surely require conduct consistent with the concepts of basic honesty. Good faith or basic honesty is the very antithesis of attempting to circumvent a legal obligation through a technicality of the law. The Waldrons, it seems clear to us, sought to abuse the process through a technicality to serve their own malevolent and selfish aims. This abuse should not have been permitted." *Id.* at 943.

Thus, the Debtor has no "absolute" right to dismiss under § 1307(b). The Court must address and consider Mosley's allegations of bad faith. Mosley respectfully submits that bad faith is manifest on this record.

### III.    The Debtor's Bad Faith Prevents Dismissal Of This Chapter 13 And Compels Conversion To A Chapter 7.

No evidence exists that the Debtor's chapter 13 was filed in good faith. Quite to the contrary, as set forth above and below, we respectfully submit that this filing was nothing but a

tactical bad faith filing.  First, it is abundantly clear that the Debtor filed this chapter 13 to frustrate enforcement of Mosley's hard-fought writ of possession, rather than to reorganize any debt.  The Eleventh Circuit has stated in *Waldron* that filing a chapter 13 to reject a contract instead of to effectuate a legitimate reorganization is bad faith sufficient to terminate a chapter 13.  785 F.2d at 941.  Under *Waldron*, the Debtor has certainly acted in bad faith.  Rejecting a contract is itself something permissible in bankruptcy, so long as it is coupled with a legitimate need to reorganize.  Filing a chapter 13 between the service of a writ of possession and its enforcement is not permissible in any way, whether coupled with a legitimate reorganization attempt or not.  The Debtor's conduct was a complete abuse of the bankruptcy process, and nothing else.

This is only highlighted by what is quite obviously the Debtor's intentional "inversion" of the last four digits of his Social Security number from "2396" to "9623" in his present chapter 13 Petition to hide the fact that is has filed *four* previous chapter 13 cases, all of which were dismissed without the filing of any schedules or any disclosures as to his assets or liabilities.  The inversion of Social Security digits is a gimmick of those abusing the bankruptcy process for improper, short-terms purposes, which can and should lead to criminal referrals to the US Attorney's Office and contempt proceedings.  The Debtor's most recent abuse of the chapter 13 process was in 2014.  This conduct also makes the Debtor's answer of "no" to Question # 9 on his petition of whether he has filed any bankruptcy in the last eight years false.  The Debtor has had *two* of such filings.  This is not innocent conduct, rather it is more evidence of bad faith, and potentially of the criminal variety.  The Debtor apparently sees the bankruptcy court as his personal vehicle to avoid obligations and duck creditors when it suits his purpose.

On top of this, the Debtor never created *any* creditor matrix or served *any* creditor with this bankruptcy except Mosley, further reflecting the case was filed in bad faith at the outset.  As set forth below, the Debtor has at least one other significant creditor in active litigation.  The Debtor did no more than file a seven-page petition, which reflects he was never serious about any reorganization.  The Debtor asked for—and received—an extension of time to file schedules, relating papers, and a plan.  But when Mosley received stay relief and the Debtor's 14 days ran out after he strung Mosley along with promises to close on the house, and the Debtor was physically removed from Mosley's house with five Sheriff officers over his protests, the Debtor simply filed his notice of voluntary dismissal with his deadline a mere ten days away to file his

schedules, related papers, and plan.  And the Debtor is now refusing to engage in any discovery whatsoever which would call to light and identify other creditors who would have an equal interest in what has transpired before this Court.

Apart from the Debtor's name and address, the Debtor's Petition contains nothing but bald-faced lies, including the last four digits of his Social Security number, obviously meant to mislead the Court and the standing chapter 13 trustee.  Contrary to the Petition, Mosley had a pre-petition eviction judgment.  Contrary to the Petition, the Debtor filed for bankruptcy within the last eight years (twice).  Contrary to the Debtor's disclosure of assets between $0 and $50,000, the Debtor was able to provide proof of $2.8 million to close on the house on May 5, 2018.  On December 22, 2017, the Debtor provided a $14,000 check to Mosley from "B C & C Industries Inc." on the Debtor's behalf to extend the closing deadline.  *See* Exhibit "I."  The persons at the house at the time of the eviction stated that the Debtor has a warehouse with some of Mosley's property inside.  Three luxury vehicles were in the house's driveway at the eviction, including a 2017 740l BMW registered to the Debtor (see Exhibit "J," William Yanes is the Debtor's name without the Zamora on his driver license, with the birthdate matching), a Mercedes-Benz minibus registered to Los Cangris Corp., and a new Ford Explorer.  While the Debtor has refused to engage in any discovery at all prior to the hearing on this matter, these facts strongly suggest he owns assets well in excess of $50,000.  The fact the Debtor has tried to block Mosley's subpoena to the entity ostensibly holding the $2.8 million to close on the sale of the house reflects that he has something to hide.

Mosley himself is owed more than $50,000 in back-rent alone, not taking into account the substantial damage and other claims set forth in Claim 1.  The Debtor is also a defendant in an active, on-going foreclosure action in Puerto Rico in which the amount of $641,125.86 has been ordered to be paid by the Debtor, and as of April 24, 2018, had not been paid with a foreclose sale with a deficiency pending.  The docket sheet reflecting no notice of this bankruptcy and the most recent paper reflecting the amount at issue are attached Composite Exhibit "K."  The Debtor's Petition is full of false information, intentionally so, reflecting bad faith supporting a conversion.  *See Jacobsen*, 609 F.3d at 661; *In re Chabot*, 411 B.R. 685, 703 (Bankr. D. Mont. 2009) (materially false schedules that would appear to have been done with the intent to mislead, coupled with filing chapter 13 to frustrate state court litigation, merits conversion over dismissal).

10

While the Debtor strung out the eviction process, and then used his chapter 13 case for the apparent sole purpose of extending his rent-free time in Mosley's home by another month, and with apparent evidence of proof of ability to close at the $2.8 million purchase price, the Debtor was neglecting Mosley's house, damaging it, damaging the contents (owned by Mosley), and stealing Mosley's personal property from the house.  Mosley's house is a luxury 10,000 square foot 7 bedroom/5 bathroom residence in Pinecrest, Florida.  The house now needs well over $100,000 in repairs, including roof leaks and related damages, and more than $100,000 of items belonging to Mosley are missing.  Very rarely does a bankruptcy court afford a landlord or mortgagee with stay relief and not warn the debtor of the consequences of damaging and stealing from a residence, as the Debtor did here.  As noted earlier, at the hearing on the Motion to lift the stay this Court provided such an admonishment to counsel for the Debtor.

Further evidence of bad faith is the Debtor's clear refusal to comply with the Court's May 16, 2018 Order [ECF 18].  In *Letterese*, the failure to attend a § 341 meeting of creditors a few days after the filing of a voluntary dismissal was found to exhibit bad faith and an abuse the chapter 13 process sufficient to support conversion.  397 B.R. at 515 (filing a notice of voluntary dismissal a few days before scheduled 341 meeting of creditors does not excuse non-appearance and is indicative of bad faith because "[c]reditors and the standing Chapter 13 trustee expended resources preparing and attending the 341 meeting with a full expectation that the Debtor would appear.  The Debtor's failure to do so is unacceptable, in bad faith and offends the orderly operation of the bankruptcy system itself.").  Seeking a Court Order extending the time to file schedules, related papers, and a plan, and then ignoring that deadline is even worse.  The good-faith representations in ECF 12 do not appear to have been genuine.  The Order was signed by the Court after consideration of the Debtor's motion; it is *not* a clerk's office or the standing trustee's notice or directive setting forth potential consequences of failing to file something in a timely manner.  The Debtor has not filed a motion to excuse or delay compliance with this Order.  The Debtor has just ignored it.  Bad faith is manifest.  The failure to file a timely plan is an independent basis for conversion outside of bad faith.  11 U.S.C. § 1307(c)(3).

## IV.    The Court Should Convert This Case To Chapter 7 Now, Or After Discovery And An Evidentiary Hearing.

The Debtor's bad faith is manifest based on the undisputed record activity alone.  The Court should convert this case to a chapter 7 now.  If the Court believes that it needs to consider

evidence apart from the record activity set forth above and the documents attached, then the Court should afford Mosley with the discovery he has sought and set an evidentiary hearing after that discovery is completed. The Court should absolutely reject the Debtor's request that the Court permit dismissal without any discovery and deny his motion for a protective order. The Debtor has successfully pulled this stunt *four* previous times without a single set of schedules ever filed. Enough is enough.

Apart from the manifest bad faith that supports conversion under a myriad of caselaw, a chapter 7 liquidation would be beneficial and appropriate. This case is not a two-party dispute that can be better resolved in state court. In fact, by refusing to comply with Mosley's discovery, the Debtor has attempted to hinder Mosley's ability to further support its position before this court. However, even without the benefit of discovery, Mosley has been able to ascertain himself that the Debtor has at least two creditors owed well into the six-figures each. The Debtor has sufficient assets to obtain a $2.8 million funding commitment, to maintain a warehouse, to drive a 2017 740l BMW and possibly other luxury cars, and be able to write a $14,000 check, with links to two private entities. His assets in Puerto Rico are unknown. His assets in Florida are unknown apart from the 2017 BMW 740l, but he has filed four prior chapter 13 bankruptcies since 2008, all in Miami. But facing large judgments in two United States jurisdictions with assets in both favors a chapter 7 for an orderly liquidation with assets and debts in multiple locations. A chapter 7 would benefit all creditors and cease what appears to be the Debtor moving between different places and refusing to disclose anything financial except when it suits him, leaving a wake of damages and in Mosley's case, theft and willful and malicious damage. Moreover, the Debtor chose this forum, not his creditors (and now for the fourth time). The Court should not let the Debtor simply move on after he uses this forum – once again—for an improper purpose.

Finally, though the Debtor's motion for a protective order does not raise objections to any of the specific duces tecum items at ECF 24, the documents and other items requested all pertain to the assets and liabilities of the Debtor, which is both relevant to a chapter 7 liquidation, and to the issue of bad faith with respect to the filing of the Debtor's chapter 13. All of Mosley's discovery is proper and should be allowed.

## V.    Conclusion

The bad faith on this record alone is so manifest that the Court should deny the Debtor's request to dismiss his chapter 13, and convert it to a chapter 7 either immediately, or after discovery and an evidentiary hearing.

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2090-1(A).

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to the parties listed below in the manner indicated, on this the 9th day of July, 2018.

**STEVEN FENDER P.A.**

*/s/ G. Steven Fender*
G. STEVEN FENDER, ESQ.
Florida Bar No. 060992
Attorney for Creditor Timothy Mosley
P.O. Box 1545
Ft. Lauderdale, FL 33302
Telephone: (407) 810-2458
Email: steven.fender@fender-law.com

**Electronic Mail Notice List**

- Sandra Navarro-Garcia                     snglawcourt@yahoo.com

- Office of the U.S. Trustee                 USTPRegion21.MM.ECF@usdoj.gov

- Nancy K. Neidich                            e2c8f01@ch13miami.com; ecf@chapter13.com

**Via U.S. Mail**

Will Zamora
10395 SW 67 Avenue
Pinecrest, FL 33156

**EQUITYMAX FINANCIAL, LLC**
**6216 N. FEDERAL HIGHWAY**
**FT. LAUDERDALE, FL 33308**
Licensed Real Estate Broker & Licensed Mortgage Lender (NMLS#1523517)
**PH: 954-267-9103     FAX: 954-771-2407**
www.equitymax.com     info@equitymax.com

## PROOF OF FUNDS FOR CLOSING

**May 5, 2018**

**To: Whom it may Concern:**

We hereby issue the following commitment for Transaction Funding to:

**Will Zamora**

And/or his entities and guarantors for the below-captioned purchase:

**10395 SW 67 Ave., Pinecrest, FL**

**Approximate transaction Amount to be Funded: $2,800,000**

This is a financial commitment for a one-day loan for the purposes of purchasing and selling an investment property. The above-captioned borrower(s) does not have to further qualify for this loan. The closing agent must be pre-approved by us.

Attached is one or more of our recent bank statements.

While we anticipate being able to close within 24 hrs. of written request, this commitment is subject to availability of funds and/or changes and/or disclosures in the closing agent's financial condition, borrower or contract status, or market conditions between the date of this commitment and the time of funding. This commitment, possibly extendable, expires on 5/20/2018.

Sincerely yours,

Gregory Emmer
Managing Member

EXHIBIT "A"



EQUITYMAX INC
HIGH YIELD SAVINGS ACCOUNT
6216 N FEDERAL HWY
FT LAUDERDALE FL 33308

 04/30/18

SNAPSHOT

```
*** SAVINGS ***   0460 SEF BUSINESS SV
ACCOUNT NUMBER    ▓▓▓▓▓▓▓▓
PREVIOUS STATEMENT BALANCE AS OF 03/31/18 .......................      2,868,980.23
    PLUS      7   DEPOSITS AND OTHER CREDITS ...................      2,622,148.96
    LESS      4   WITHDRAWALS AND OTHER DEBITS ................      1,032,214.97
CURRENT STATEMENT BALANCE AS OF 04/30/18 ........................      4,458,914.22
NUMBER OF DAYS IN THIS STATEMENT PERIOD    30
```



EQUITYMAX INC PENSION PLAN
BRADFORD N EMMER
6216 N FEDERAL HWY
FORT LAUDERDALE FL  33308

04/30/18

IMAGES 10
CYCLE-031

```
*** CHECKING ***  X9947 SGB BUS ANALYS
ACCOUNT NUMBER    ▓▓▓▓▓▓▓▓
PREVIOUS STATEMENT BALANCE AS OF 03/31/18 .......................      1,428,365.91
    PLUS     32   DEPOSITS AND OTHER CREDITS ...................      3,678,742.13
    LESS     25   CHECKS AND OTHER DEBITS ......................      1,668,699.11
CURRENT STATEMENT BALANCE AS OF 04/30/18 ........................      3,438,408.93
NUMBER OF DAYS IN THIS STATEMENT PERIOD    30
```

Begin forwarded message:

> **From:** "Leslie A. Berkoff" <<u>lberkoff@moritthock.com</u>>
> **Date:** May 25, 2018 at 12:08:32 PM EDT
> **To:** 'Ileana Christianson' <<u>ichristianson@sgc-attorneys.com</u>>
> **Cc:** Keith Seldin <<u>kseldin@bellsouth.net</u>>
> **Subject: RE: Zamora**
>
> Ileana
> What about the gate code that was requested? Leslie
>
> **From:** Ileana Christianson [<u>mailto:ichristianson@sgc-attorneys.com</u>]
> **Sent:** Friday, May 25, 2018 11:23 AM
> **To:** Leslie A. Berkoff
> **Cc:** Keith Seldin
> **Subject:** Re: Zamora
>
> I spoke with client. They are continuing to move out. There is only 1 key (Medeco), but they cannot turn it in until they are done moving out. They have removed most of the big furniture items but still have 3-4 truck loads left.

EXHIBIT "B"

For what it is worth - Title is supposed to be in today. Lien search from the Village of Pinecrest, which does not allow for rush process, is estimate to be in first week in June according to title agent.



Ileana E. Christianson, Esquire
Partner, Commercial Litigation & Bankruptcy
15321 S. Dixie Highway, Suite 308
Miami, Florida 33157
T:  305.456.5652  C:  305.389.8666
ichristianson@sgc-attorneys.com
www.sgc-attorneys.com

On May 25, 2018, at 10:14 AM, Leslie A. Berkoff <lberkoff@moritthock.com> wrote:

Kindly advise where this stands.

Leslie A. Berkoff
Partner
400 Garden City Plaza
Garden City, NY 11530
Direct: 516.880.7243 | P: 516.873.2000 | F:516.873.2010
http://www.moritthock.com

CONFIDENTIALITY NOTICE:

This email and the information contained herein and attachments hereto are legally privileged and confidential information intended only for the use of the individual or entity named above.  If the reader of this email is not the intended recipient, you are hereby notified that any forwarding, dissemination, use, distribution or copying of this email, its contents, and/or its attachments, or the taking of any action in reliance on the contents thereof is strictly prohibited.  If you have received this email in error, please immediately notify the sender and delete the email and any attachments and destroy any tangible manifestation thereof.  Thank you.

On May 25, 2018, at 7:36 AM, Ileana Christianson <ichristianson@sgc-attorneys.com> wrote:

GM! Yes of course. I know they are still moving out. I live blocks away. Let me get in touch with them this morning. Let me know your thoughts on timing when your representative will be there. I can meet him or her there as well.

Ileana E. Christianson, Esquire
Partner, Commercial Litigation & Bankruptcy
15321 S. Dixie Highway, Suite 308
Miami, Florida 33157
T:  305.456.5652  C:  305.389.8666
ichristianson@sgc-attorneys.com
www.sgc-attorneys.com

On May 25, 2018, at 7:33 AM, Leslie A. Berkoff
<lberkoff@moritthock.com> wrote:

Ileana,
I would appreciate a prompt response to the below request.
Given your clients alleged desire to still obtain the house, their
cooperation in the turnover today would certainly be a factor in
my client's consideration of any potential sale.
Leslie

Leslie A. Berkoff
Partner
400 Garden City Plaza
Garden City, NY 11530
Direct: 516.880.7243 | P: 516.873.2000 | F:516.873.2010
http://www.moritthock.com

CONFIDENTIALITY NOTICE:

This email and the information contained herein and
attachments hereto are legally privileged and confidential
information intended only for the use of the individual or entity
named above.  If the reader of this email is not the intended
recipient, you are hereby notified that any forwarding,
dissemination, use, distribution or copying of this email, its
contents, and/or its attachments, or the taking of any action in
reliance on the contents thereof is strictly prohibited.  If you
have received this email in error, please immediately notify the
sender and delete the email and any attachments and destroy
any tangible manifestation thereof.  Thank you.

On May 24, 2018, at 8:55 PM, Leslie A. Berkoff
<lberkoff@moritthock.com> wrote:

Consistent with your priors emails
wherein you advised that your clients
intended to be cooperative in this
process; please confirm that we can
have someone at the premises
tomorrow to collect the house keys and
obtain the gate code. Thank you.

**From:** Ileana Christianson
[mailto:ichristianson@sgc-
attorneys.com]
**Sent:** Thursday, May 24, 2018 7:07 PM
**To:** Leslie A. Berkoff
**Cc:** Keith Seldin
**Subject:** Re: Zamora

I spoke to client. You have nothing
to worry about. They understand
their obligations. They have
continued to work with the title
company and still have hopes that
they will close. They are in the
process of moving out because they
have no choice but if your client is
willing to close after the fact, and
changes his mind on mutually
executing releases and dismissals at
closing, let us know.

Ileana E. Christianson, Esq.
Stone, Glass & Connolly
305.389.8666

On May 24, 2018, at 6:09 PM, Leslie
A. Berkoff
<lberkoff@moritthock.com> wrote:

> Ileana,
>
> It is our
> understanding that
> there are moving vans
> at the Premises. I will
> remind you to advise
> your clients that if
> anything of Mr.
> Mosley's is removed
> from the Premises, or
> there is damage, we
> intend to bring that to
> the attention of the
> Bankruptcy Court
> immediately and hold
> your clients
> accountable. Please
> be guided
> accordingly.
>
> Leslie
>
> Leslie A. Berkoff
> Partner

4

400 Garden City
Plaza
Garden City, NY
11530
Direct: 516.880.7243 |
P: 516.873.2000 |
F:516.873.2010
http://www.moritthoc
k.com

CONFIDENTIALITY
NOTICE:

This email and the
information contained
herein and
attachments hereto are
legally privileged and
confidential
information intended
only for the use of the
individual or entity
named above.  If the
reader of this email is
not the intended
recipient, you are
hereby notified that
any forwarding,
dissemination, use,
distribution or
copying of this email,
its contents, and/or its
attachments, or the
taking of any action in
reliance on the
contents thereof is
strictly prohibited.  If
you have received this
email in error, please
immediately notify
the sender and delete
the email and any
attachments and
destroy any tangible
manifestation
thereof.  Thank you.

**Leslie A. Berkoff**

---

**Subject:**                    FW: Term Sheet SUBJET TO FRE 408

---

**From:** Leslie A. Berkoff
**Sent:** Monday, May 21, 2018 9:35 AM
**To:** Ileana Christianson
**Subject:** Re: Term Sheet SUBJET TO FRE 408

I would not count on moving it. Perhaps someone else from your firm can cover this closing.

Leslie A. Berkoff
Partner
400 Garden City Plaza
Garden City, NY 11530
Direct: 516.880.7243 | P: 516.873.2000 | F:516.873.2010
http://www.moritthock.com

CONFIDENTIALITY NOTICE:

This email and the information contained herein and attachments hereto are legally privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this email is not the intended recipient, you are hereby notified that any forwarding, dissemination, use, distribution or copying of this email, its contents, and/or its attachments, or the taking of any action in reliance on the contents thereof is strictly prohibited. If you have received this email in error, please immediately notify the sender and delete the email and any attachments and destroy any tangible manifestation thereof. Thank you.

On May 21, 2018, at 9:06 AM, Ileana Christianson <ichristianson@sgc-attorneys.com> wrote:

> No, not anymore. Jose Torres is out of the picture. This new deal has been with the title company of the investor/buyer and through me.
> <unknown.tiff>
> Ileana E. Christianson, Esquire
> Partner, Commercial Litigation & Bankruptcy
> 15321 S. Dixie Highway, Suite 308
> Miami, Florida 33157
> T:  305.456.5652  C:  305.389.8666
> ichristianson@sgc-attorneys.com
> www.sgc-attorneys.com

>> On May 21, 2018, at 8:57 AM, Leslie A. Berkoff <lberkoff@moritthock.com> wrote:
>>
>> My understanding is your client has a real estate attorney who has been representing them. Would seem they could handle closing. At present my client is not prepared to put anything off. Leslie

1

Leslie A. Berkoff
Partner
400 Garden City Plaza
Garden City, NY 11530
Direct: 516.880.7243 | P: 516.873.2000 | F:516.873.2010
http://www.moritthock.com

CONFIDENTIALITY NOTICE:

This email and the information contained herein and attachments hereto are legally privileged and confidential information intended only for the use of the individual or entity named above.  If the reader of this email is not the intended recipient, you are hereby notified that any forwarding, dissemination, use, distribution or copying of this email, its contents, and/or its attachments, or the taking of any action in reliance on the contents thereof is strictly prohibited.  If you have received this email in error, please immediately notify the sender and delete the email and any attachments and destroy any tangible manifestation thereof.  Thank you.

On May 21, 2018, at 8:50 AM, Ileana Christianson <ichristianson@sgc-attorneys.com> wrote:

> Good morning! I will get back to you asap. Client is trying to negotiate with the broker directly. I am out of town for a trial Friday so is there any way we can close on Tuesday because Monday is memorial day. Mind you, I am also set for trial Tuesday through Friday next week, but I will be here and can manage.
> <unknown.tiff>
> Ileana E. Christianson, Esquire
> Partner, Commercial Litigation & Bankruptcy
> 15321 S. Dixie Highway, Suite 308
> Miami, Florida 33157
> T:  305.456.5652  C:  305.389.8666
> ichristianson@sgc-attorneys.com
> www.sgc-attorneys.com

O

**Subject:**                                   FW: Title

-----Original Message-----
From: Leslie A. Berkoff
Sent: Tuesday, May 22, 2018 12:12 PM
To: 'Ileana Christianson'
Cc: 'Keith Seldin'
Subject: RE: Title

Ileana

First I cannot tell from this where your clients actually stand on all of the requests we have made and whether they are amenable to the same.  Therefore, before I send anything to anyone I need a response to that email.  Second, we have the payoff letter and can easily send -- however I am unclear as to why your clients have suddenly changed closing agent given that the other closing agent has all of the relevant documents and now it seems we have to recreate the wheel.  Therefore, among other things requested if they are indeed changing agents then we will also need an indemnification against claims by the original closing agent.  Kindly get back to me with a full response. Leslie

-----Original Message-----
From: Ileana Christianson [mailto:ichristianson@sgc-attorneys.com]
Sent: Tuesday, May 22, 2018 12:01 PM
To: Leslie A. Berkoff
Subject: Title

Can you please send payoff letter of mortgage and who should our title agent contact from Seller's end? Also send payoff or releases of any and all liens resolved on property. Please rush so title company can continue.

Ileana E. Christianson, Esq.
Stone, Glass & Connolly
305.389.8666

**Leslie A. Berkoff**

**Subject:**                     FW: Subject to FRE 408


Begin forwarded message:

> **From:** Ileana Christianson <ichristianson@sgc-attorneys.com>
> **Date:** May 22, 2018 at 8:56:35 PM EDT
> **To:** "Leslie A. Berkoff" <lberkoff@moritthock.com>
> **Cc:** Keith Seldin <kseldin@bellsouth.net>
> **Subject: Re: Subject to FRE 408**
>
> Leslie,
>
> Thank you again for trying. I really did want to see this deal close and all litigation resolved. The client does not agree so they will move out. No need to call the Sheriff. They will move out and turn over the keys and the house to the broker who can inspect to ensure it is turned over with your client's belongings. The broker was the one who was there when the Zamoras moved in. Thank once again.
>
> Ileana E. Christianson, Esq.
> Stone, Glass & Connolly
> 305.389.8666



EXHIBIT "D"







EXHIBIT "E"

























Property 10395 SW 67th Ave

Missing Items

Hallway
Stool
Picture on wall

Bedroom 1 (Downstairs)
King Mattress Set/ Comforter Set
TV
Dresser

Bedroom 2 (Downstairs)
Full size Headboard and frame
Queen Mattress Set
Chair
Nightstand (2)
TV/TV Stand

Kitchen
4 bar stools
Dishes
Glasses
Pots/Pans
TV

Front Room (Living Room)
Large Rug under couches

Pool
Lounge chairs
Table

Upstairs Hall
Chaise couch

Master Bedroom
King Mattress set with Adjustable Base

Bedroom 3 (Upstairs)
TV
Desk
Twin Mattress Set with Comforter
Bedframe/Headboard
TV Stand
Locker

Bedroom 5
Light Fixture
Wall Mount

Garage Gym Equipment
Tricep-Bicep machine
Bench Incline
Bench Machine
Lat Pull Machine
Training System Machine
Kneeling curl machine
Squat press machine
Ab & pull up bar
Leg Extension Machine
Ab Machine
Dumbbell Set
Plates 45lb (10), 25lb (2), 5lb (2) 2.5lb (2)
45 bar/Curl Bar

EXHIBIT "F"

Property 10395 SW 67th Ave

Damaged

Bedroom 1 (Downstairs)
Dressers (2)

Bathroom 1 (Downstairs)
Cabinets

Bedroom 2 (Downstairs)
Wall Damage
Carpet Damage

Den
Sectional Sofa
Marble Table missing legs (Centerpiece)
Rug

Game Room
Wall Cracked
Street Fighter Arcade Broken

Master Bedroom
Ceiling room
Desk

Bedroom 3 (upstairs)

Closet Drawers

Bedroom 4 (Upstairs)
TV wall mount

Bathroom (Upstairs)

Bathroom (Upstairs)
Sink drawers

Bedroom 5
Carpet Stains
Wall Stains

Hall (Upstairs)
Ceiling Crack

Kitchen
Cabinets top and bottom

Living Room/Foyer
Zebra Rug

Laundry Room
Washer and Dryer Rusted

Hallway
Tile Cracked

Driveway
Stones

Roof
Bee's in the attic

**Subject:** Re: In re Will Zamora

**Date:**    Wednesday, June 6, 2018 at 2:39:45 PM Eastern Daylight Time

**From:**    Steven Fender

**To:**       snglawcourt@yahoo.com

**CC:**       Leslie A. Berkoff, Steven Fender

Hello.  Can you please provide us an update or response on the below?  Thank you.

---

**From:** Steven Fender <steven.fender@fender-law.com>
**Date:** Monday, June 4, 2018 at 4:35 PM
**To:** <snglawcourt@yahoo.com>
**Cc:** "Leslie A. Berkoff" <lberkoff@moritthock.com>, Steven Fender <steven.fender@yahoo.com>
**Subject: In re Will Zamora**

Hello Ms. Navarro-Garcia:

          Attached is the notice of taking the Debtor Mr. Zamora's 2004 examination on July 9 at 10 am, with the documents due on July 6.  If these dates are not convenient, please provide me with other dates prior to the July 17 hearing.  We would also like to take the 2004 examination of Janet Zamora.  Are you representing her, and if not, can you provide us with a last known address for service?
Thank you-
Steven Fender

EXHIBIT "G"

**Subject:** Re: In re Will Zamora
**Date:** Thursday, June 7, 2018 at 5:22:34 PM Eastern Daylight Time
**From:** Steven Fender
**To:** Sandra Navarro-Garcia
**CC:** SNG Admin Assistant, Berkoff Leslie, steven.fender@fender-law.com

As I have stated in two emails, I am willing to change the date. Why don't you give me a date when you are available. Are you planning to produce any documents voluntarily?

Sent from my iPhone

On Jun 7, 2018, at 5:13 PM, Sandra Navarro-Garcia <Sandra@snglaw.net> wrote:

> Good afternoon Mr. Fender, I hope this email finds you well. I am in receipt of the 2004 Examination for Mr. Zamora. I will not be available on this date as it is my birthday and I have travel plans with my family the days leading up to and after. Given that I am unable to provide dates prior to the date requested I have prepared, filed and attached hereto Debtor's Motion for Protective Order and Objection to Subpoena Issued To EquityMax. I will forward you the notice of hearing immediately upon receipt. Please note that I do not represent Ms. Janet Zamora. Thank you for your attention to this matter.
>
>
>
> Sandra Navarro-Garcia
> Sandra Navarro-Garcia, P.A.
> 7951 SW 40th Street, Suite 202
> Miami, Fl. 33155
> Telephone: (305) 264-7500
> Facismile: (305) 264-7587
> E-mail: Sandra@snglaw.net
>
> The information contained in this transmission may be attorney/client privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply e-mail.
>
>
>
> **From:** SNG Court <snglawcourt@yahoo.com>
> **Sent:** Wednesday, June 06, 2018 4:55 PM
> **To:** Sandra Navarro-Garcia <Sandra@snglaw.net>
> **Subject:** Fwd: In re Will Zamora
>
>
>
> Sandra Navarro-Garcia

Sandra Navarro-Garcia, P.A.
7951 SW 40th Street Suite 202
Miami, Fl. 33155
Telephone: (305) 264-7500
Facsimile: (305) 264-7587
E-mail: Sandra@snglaw.net

Begin forwarded message:

**From:** Steven Fender <steven.fender@fender-law.com>
**Date:** June 4, 2018 at 4:35:16 PM EDT
**To:** <snglawcourt@yahoo.com>
**Cc:** "Leslie A. Berkoff" <lberkoff@moritthock.com>, Steven Fender
<steven.fender@yahoo.com>
**Subject: In re Will Zamora**

Hello Ms. Navarro-Garcia:
        Attached is the notice of taking the Debtor Mr. Zamora's 2004 examination
on July 9 at 10 am, with the documents due on July 6.  If these dates are not
convenient, please provide me with other dates prior to the July 17 hearing.  We
would also like to take the 2004 examination of Janet Zamora.  Are you
representing her, and if not, can you provide us with a last known address for
service?
Thank you-
Steven Fender

<Motion for Protective Order.pdf>



EXHIBIT "I"

# Florida Motor Vehicle Registration

## Registrant Information

|  |  |
|---|---|
| **Name:** | YANES, WILLIAM |
| **Date of Birth:** | 09/1963 |
| **Address:** | 850 N MIAMI AVE APT 1510 |
|  | MIAMI, FL 33136-3545 |
|  | MIAMI-DADE COUNTY |

## Lessee Information

|  |  |
|---|---|
| **Name:** | YANES, WILLIAM |
| **Date of Birth:** | 09/1963 |
| **Address:** | 850 N MIAMI AVE APT 1510 |
|  | MIAMI, FL 33136-3545 |
|  | MIAMI-DADE COUNTY |

## Registration Information

|  |  |
|---|---|
| **Original Registration Date:** | 03/27/2017 |
| **Registration Date:** | 09/22/2017 |
| **Registration Expiration Date:** | 09/10/2018 |
| **Decal Number:** | 13267636 |

## Vehicle Information

| | | | | | |
|---|---|---|---|---|---|
| **VIN:** | WBA7E2C31HG741131 | **Restraint:** | | **Transmission:** | T |
| **Vehicle Class:** | PASSENGER CAR/LIGHT TRUCK | **Power Steering:** | Standard | **Air Conditioning:** | Standard |
| **Model Year:** | 2017 | **Roof:** | Power sun/moon roof | **Front Wd:** | No |
| **Make:** | BMW | **Optional Roof:** | | **4WD:** | No |
| **Model:** | 740I | **Fuel:** | Gas | **Anti-Lock Brakes:** | 4 wheel standard |
| **Series:** | 740I | **Tilt Wheel:** | Standard | **Power Brakes:** | Standard |
| **Style:** | Sedan 4 Door | **Security System:** | Passive Immobilize Key, Keyless entry, and alarm | **Power Windows:** | Standard |
| **Color:** | Gray | **Radio:** | AM/FM CD/MP3 | **Daytime Running Lights:** | Standard |
| **Engine Type:** | 6 | **Engine Size:** | 183 | **Base Price:** | $81,500 |
| **Net Weight:** | 4,225 lbs. | | | | |

## Plate Information

|  |  |
|---|---|
| **License Plate Number:** | HXZN76 |
| **License Plate Type:** | Private |
| **Plate State:** | Florida |
| **Previous License Plate Number:** | HXZN76 |
| **Previous Plate State:** | Florida |

## Source Information

|  |  |
|---|---|
| **Data Source:** | GOVERNMENTAL |

# Florida Motor Vehicle Registration

**Registrant Information**

**Registrant 1**

|  |  |
|---|---|
| **Name:** | BARRIOS, DE LEON ANTONIO ADOLFO |
| **Date of Birth:** | 11/1956 |
| **Address:** | 15949 SW 81ST ST |
|  | MIAMI, FL 33193-3064 |
|  | MIAMI-DADE COUNTY |

**Registrant 2**

|  |  |
|---|---|
| **Name:** | BELTETON, CRISTINA EVELIA |
| **Date of Birth:** | 01/1967 |
| **Address:** | 11480 SW 40TH ST |
|  | MIAMI, FL 33165-3365 |
|  | MIAMI-DADE COUNTY |

**Registrant 3**

|  |  |
|---|---|
| **Name:** | BELTETON, DE LEON CRISTIAN RAUL |
| **Date of Birth:** | 03/1990 |
| **Address:** | 11480 SW 40TH ST |
|  | MIAMI, FL 33165-3365 |
|  | MIAMI-DADE COUNTY |

**Registration Information**

|  |  |
|---|---|
| **Original Registration Date:** | 03/07/2018 |
| **Registration Date:** | 03/07/2018 |
| **Registration Expiration Date:** | 11/23/2018 |
| **Decal Number:** | 16857855 |

**Vehicle Information**

| VIN: | 3GNCA23B69S581276 | Restraint: |  | Transmission: | D |
|---|---|---|---|---|---|
| **Vehicle Class:** | PASSENGER CAR/LIGHT TRUCK | **Power Steering:** | Standard | **Air Conditioning:** | Standard |
| **Model Year:** | 2009 | **Roof:** | None / not available | **Front Wd:** | Yes |
| **Make:** | Chevrolet | **Optional Roof:** | Power sun/moon roof | **4WD:** | No |
| **Model:** | HHR | **Fuel:** |  | **Anti-Lock Brakes:** | 4 wheel standard |
| **Series:** | LT | **Tilt Wheel:** | Standard | **Power Brakes:** | Standard |
| **Style:** | 4 Dr Wagon Sport Utility | **Security System:** | Passive Immobilizer key & keyless entry | **Power Windows:** | Standard |
| **Color:** | Silver | **Radio:** | AM/FM CD/MP3 | **Daytime Running Lights:** | Standard |
| **Engine Type:** | 4 | **Engine Size:** | 134 | **Base Price:** | $18,930 |
| **Net Weight:** | 3,143 lbs. |  |  |  |  |

**Plate Information**

|  |  |
|---|---|
| **License Plate Number:** | AZBZ33 |
| **License Plate Type:** | Private |
| **Plate State:** | Florida |
| **Previous License Plate Number:** | ATCR14 |
| **Previous Plate State:** | Florida |

# Florida Motor Vehicle Registration

**Registrant Information**

|  |  |
|---|---|
| Company: | LOS CANGRIS CORP. |
| Address: | 10990 METRO PKWY |
|  | FORT MYERS, FL 33966-1201 |
|  | LEE COUNTY |

**Registration Information**

|  |  |
|---|---|
| Original Registration Date: | 12/17/2016 |
| Registration Date: | 06/26/2017 |
| Registration Expiration Date: | 06/30/2018 |
| Decal Number: | 09694019 |

**Vehicle Information**

| VIN: | WDZPE8DC8F5992399 | Restraint: |  | Transmission: | S |
|---|---|---|---|---|---|
| Vehicle Class: | PASSENGER CAR/LIGHT TRUCK | Power Steering: | Standard | Air Conditioning: | Standard |
| Model Year: | 2015 | Roof: | None / not available | Front Wd: | No |
| Make: | Mercedes-Benz | Optional Roof: | Power sun/moon roof | 4WD: | No |
| Model: | Sprinter | Fuel: | Diesel | Anti-Lock Brakes: | 4 wheel standard |
| Series: | 2500 | Tilt Wheel: | Standard | Power Brakes: | Standard |
| Style: | Extended Sport Van | Security System: | Passive Engine Immobilizer & keyless entry | Power Windows: | Standard |
| Color: | Black | Radio: | AM/FM CD/MP3 | Daytime Running Lights: | Standard |
| Engine Type: | 4 | Engine Size: | 131 | Base Price: | $46,180 |
| Net Weight: | 5,920 lbs. |  |  |  |  |

**Plate Information**

|  |  |
|---|---|
| License Plate Number: | GUUZ67 |
| License Plate Type: | Private |
| Plate State: | Florida |
| Previous License Plate Number: | GUUZ67 |
| Previous Plate State: | Florida |

JUDGE

# United States District Court
## District of Puerto Rico (San Juan)
### CIVIL DOCKET FOR CASE #: 3:15-cv-02680-ADC

DLJ Mortgage Capital, Inc. v. Yanes Zamora
Assigned to: Chief Judge Aida M. Delgado-Colon
Demand: $641,000
Cause: 28:1345 Foreclosure

Date Filed: 10/29/2015
Date Terminated: 03/20/2017
Jury Demand: None
Nature of Suit: 220 Real Property: Foreclosure
Jurisdiction: Diversity

**Plaintiff**

**DLJ Mortgage Capital, Inc.**
*TERMINATED: 01/23/2018*

represented by **Iones A. Rivera-Jimenez**
Martinez & Torres Law offices
PO Box 192938
San Juan, PR 00919-2938
787-549-9728/787-767-8244
Fax: 787-767-1183
Email: irivera@martineztorreslaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lime Residential, Ltd.**

represented by **Iones A. Rivera-Jimenez**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Will Yanes-Zamora**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/29/2015 | 1 | COMPLAINT against All Defendants ( Filing fee $400 receipt number 0104-4649054.), filed by DLJ Mortgage Capital, Inc.. Service due by 2/29/2016, (Attachments: # 1 Category Sheet Category Sheet, # 2 Civil Cover Sheet Civil Cover Sheet, # 3 Summons Summons)(Rivera-Jimenez, Iones) (Entered: 10/29/2015) |
| 10/30/2015 | 2 | NOTICE OF JUDGE ASSIGNMENT Case has been assigned to Chief Judge Aida M. Delgado-Colon (jla) (Entered: 10/30/2015) |
| 10/30/2015 | 3 | Summons Issued as to Will Yanes Zamora (jla) (Entered: 10/30/2015) |
| 11/02/2015 | 4 | MOTION for Issuance of Summons *Urgent* as to All Defendants filed by Iones A. Rivera-Jimenez on behalf of DLJ Mortgage Capital, Inc. Suggestions in opposition/response due by 11/20/2015 (Attachments: # 1 Summons New Summons)(Rivera-Jimenez, Iones) Modified on 11/3/2015 to edit text (ov) (Entered: 11/02/2015) |

EXHIBIT "K"

| 11/03/2015 | 5 | ORDER granting 4 Motion for Issuance of Summons. Clerk is to issue new summons accordingly. Signed by Chief Judge Aida M. Delgado-Colon on 11/3/2015. (wm) (Entered: 11/03/2015) |
| 11/03/2015 | 6 | Summons Issued as to Will Yanes Zamora (ar) (Entered: 11/03/2015) |
| 11/25/2015 | 7 | First MOTION for Service by Publication as to All Defendants filed by Iones A. Rivera-Jimenez on behalf of DLJ Mortgage Capital, Inc. Suggestions in opposition/response due by 12/14/2015 (Attachments: # 1 Exhibit, # 2 Text of Proposed Order Proposed Text, # 3 Text of Proposed Order Proposed Text)(Rivera-Jimenez, Iones) (Entered: 11/25/2015) |
| 12/07/2015 | 8 | ORDER re 7 Motion for Service by Publication. Granted. Clerk is to issue summons by publication accordingly. Plaintiff is also directed to send this order and the summons by publication to defendant by certified mail return receipt requested to defendant's last known address in both Gurabo, PR and Miami, FL. Signed by Chief Judge Aida M. Delgado-Colon on 12/4/2015. (wm) (Entered: 12/07/2015) |
| 12/07/2015 | 9 | ORDER OF SERVICE OF SUMMONS BY PUBLICATION. Signed by Chief Judge Aida M. Delgado-Colon on 12/4/2015.(wm) (Entered: 12/07/2015) |
| 12/08/2015 | 10 | Summons by Publication Issued as to Will Yanes-Zamora (jla) (Entered: 12/08/2015) |
| 01/22/2016 | 11 | First MOTION for Default Entry as to All Defendants, First MOTION for Default Judgment as to All Defendants filed by Iones A. Rivera-Jimenez on behalf of DLJ Mortgage Capital, Inc. Suggestions in opposition/response due by 2/8/2016 (Attachments: # 1 Text of Proposed Order Proposed Order, # 2 Exhibit Exhibit I, # 3 Exhibit Exhibit I, # 4 Exhibit Exhibit II, # 5 Exhibit Exhibit V, # 6 Exhibit Exhibit III IV, # 7 Exhibit Exhibit VI, # 8 Exhibit Exhibit VII)(Rivera-Jimenez, Iones) (Entered: 01/22/2016) |
| 03/08/2016 | 12 | Second MOTION for Default Entry as to All Defendants, Second MOTION for Default Judgment as to All Defendants filed by Iones A. Rivera-Jimenez on behalf of DLJ Mortgage Capital, Inc. Suggestions in opposition/response due by 3/28/2016 (Rivera-Jimenez, Iones) (Entered: 03/08/2016) |
| 05/17/2016 | 13 | MOTION for Default Entry as to All Defendants, MOTION for Default Judgment as to All Defendants filed by Iones A. Rivera-Jimenez on behalf of DLJ Mortgage Capital, Inc. Suggestions in opposition/response due by 6/3/2016 (Rivera-Jimenez, Iones) (Entered: 05/17/2016) |
| 07/05/2016 | 14 | MOTION for Default Entry as to All Defendants, MOTION for Default Judgment as to All Defendants filed by Iones A. Rivera-Jimenez on behalf of DLJ Mortgage Capital, Inc. Suggestions in opposition/response due by 7/22/2016 (Attachments: # 1 Exhibit SCRA)(Rivera-Jimenez, Iones) (Entered: 07/05/2016) |
| 07/22/2016 | 15 | ORDER granting in part and denying in part 11 Motion for Entry of Default; denying 11 Motion for Default Judgment. Request to entry of default is granted. Clerk of the Court is to enter default accordingly. Plaintiff's request for judgment by default is DENIED. Plaintiff must comply with L.Civ.R. 5(g) and submit certified translations of all documents not in the English language, including these required by L.Civ.R. 55 in order to enable entry of judgment. Signed by Chief Judge Aida M. Delgado-Colon on 7/18/16. (ov) (Entered: 07/22/2016) |
| 07/22/2016 | 16 | Clerk's ENTRY OF DEFAULT as to Will Yanes-Zamora (ov) (Entered: 07/22/2016) |

| 07/22/2016 | 17 | ORDER finding as moot 12 Motion for Entry of Default; finding as moot 12 Motion for Default Judgment. See D.E. at ECF #16. Signed by Chief Judge Aida M. Delgado-Colon on 7/18/16. (ov) (Entered: 07/22/2016) |
| --- | --- | --- |
| 07/22/2016 | 18 | ORDER finding as moot 13 Motion for Entry of Default; finding as moot 13 Motion for Default Judgment. See D.E. at ECF #16. Signed by Chief Judge Aida M. Delgado-Colon on 7/18/16. (ov) (Entered: 07/22/2016) |
| 07/28/2016 | 19 | ORDER finding as moot 14 Motion for Entry of Default; finding as moot 14 Motion for Default Judgment. See ECF No. 5. Signed by Chief Judge Aida M. Delgado-Colon on 7/28/16. (ov) (Entered: 07/28/2016) |
| 08/24/2016 | 20 | First Motion In Compliance , MOTION for Default Judgment as to All Defendants filed by Iones A. Rivera-Jimenez on behalf of DLJ Mortgage Capital, Inc. Suggestions in opposition/response due by 9/12/2016 (Attachments: # 1 Exhibit Exhibit 1)(Rivera-Jimenez, Iones) (Entered: 08/24/2016) |
| 08/24/2016 | 21 | NOTICE *Proposed text of order* by DLJ Mortgage Capital, Inc. re 20 First Motion In Compliance MOTION for Default Judgment as to All Defendants (Rivera-Jimenez, Iones) (Entered: 08/24/2016) |
| 10/18/2016 | 22 | ORDER re 20 First Motion In Compliance MOTION for Default Judgment as to All Defendants filed by DLJ Mortgage Capital, Inc. Denied without prejudice. Plaintiff must show that the loan modification, ECF No. 11-5, was recorded in the Puerto Rico Property Register, or that the mortgage was modified pursuant to applicable law. Signed by Chief Judge Aida M. Delgado-Colon on 10/13/2016.(wm) (Entered: 10/18/2016) |
| 11/11/2016 | 23 | First Motion In Compliance , MOTION for Default Judgment as to Will Yanes-Zamora filed by Iones A. Rivera-Jimenez on behalf of DLJ Mortgage Capital, Inc. Suggestions in opposition/response due by 12/1/2016 (Attachments: # 1 Exhibit I)(Rivera-Jimenez, Iones) (Entered: 11/11/2016) |
| 03/20/2017 | 24 | ORDER re: 23 Motion In Compliance, Motion for Default Judgment. Granted. Clerk of the Court is to enter judgment by default accordingly. Signed by Chief Judge Aida M. Delgado-Colon on 3/16/2017. (mr) (Entered: 03/20/2017) |
| 03/20/2017 | 25 | DEFAULT JUDGMENT against Will Yanes-Zamora. Signed by Chief Judge Aida M. Delgado-Colon on 3/16/2017.(mr) (Entered: 03/20/2017) |
| 03/30/2017 | 26 | MOTION requesting Order *for notice of judgment* filed by Iones A. Rivera-Jimenez on behalf of DLJ Mortgage Capital, Inc. Responses due by 4/13/2017. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Rivera-Jimenez, Iones) (Entered: 03/30/2017) |
| 04/25/2017 | 27 | ORDER granting 26 Motion requesting Order. Clerk of Court is to notify the Court's default judgment, ECF No. 25, to defendant's last known address. Signed by Chief Judge Aida M. Delgado-Colon on 4/25/2017. (wm) (Entered: 04/25/2017) |
| 05/02/2017 | 28 | AMENDED DEFAULT JUDGMENT. (To correct signing date.) Signed by Chief Judge Aida M. Delgado-Colon on 3/20/2017.(wm) (Entered: 05/02/2017) |
| 07/06/2017 | 29 | First MOTION to Substitute Party filed by Iones A. Rivera-Jimenez on behalf of DLJ Mortgage Capital, Inc. Responses due by 7/20/2017. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Attachments: # 1 Exhibit I)(Rivera-Jimenez, Iones) (Entered: 07/06/2017) |

| 07/06/2017 | 30 | Amended MOTION to Substitute Party filed by Iones A. Rivera-Jimenez on behalf of DLJ Mortgage Capital, Inc. Responses due by 7/20/2017. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Attachments: # 1 Exhibit I)(Rivera-Jimenez, Iones) (Entered: 07/06/2017) |
|---|---|---|
| 07/06/2017 | 31 | MOTION to Withdraw Document re: 29 First MOTION to Substitute Party filed by DLJ Mortgage Capital, Inc. filed by Iones A. Rivera-Jimenez on behalf of DLJ Mortgage Capital, Inc. Responses due by 7/20/2017. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Related document(s) 29 ) (Rivera-Jimenez, Iones) (Entered: 07/06/2017) |
| 08/02/2017 | 32 | First NOTICE of Filing Exhibits Mortgage Note re 30 Amended MOTION to Substitute Party filed by DLJ Mortgage Capital, Inc. (Rivera-Jimenez, Iones) (Entered: 08/02/2017) |
| 09/15/2017 | 33 | Second MOTION to Substitute Party filed by Iones A. Rivera-Jimenez on behalf of DLJ Mortgage Capital, Inc. Responses due by 9/29/2017. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Rivera-Jimenez, Iones) (Entered: 09/15/2017) |
| 10/23/2017 | 34 | Third MOTION to Substitute Party filed by Iones A. Rivera-Jimenez on behalf of DLJ Mortgage Capital, Inc. Responses due by 11/6/2017. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Rivera-Jimenez, Iones) (Entered: 10/23/2017) |
| 12/20/2017 | 35 | ORDER re 34 Motion to Substitute Party. ; re 31 Motion to Withdraw Document. HELD IN ABEYANCE. Plaintiff shall inform the Court within ten calendar days from the issuance of this Order whether the mortgage in question is an FHA-approved loan, or one under either Fannie Mae or Freddie Mac. If so, plaintiff shall show cause within that term as to why the case should not be subject to the temporary foreclosure moratorium instituted by the U.S. Department of Housing and Urban Development (HUD) for properties in areas impacted by Hurricanes Harvey, Irma and Maria, see HUD Mortgagee Letter 2017-15; or under temporary servicing requirements for mortgages impacted by Hurricane Maria. See Freddie Macs Bulletin number 2017-21 of September 25, 2017, and Fannie Maes News Release of October 6, 2016. Signed by Chief Judge Aida M. Delgado-Colon on 12/18/2017. (sr) (Entered: 12/20/2017) |
| 12/28/2017 | 36 | Motion In Compliance as to 35 Order on Motion to Substitute Party, Order on Motion to Withdraw Document, MOTION to Stay filed by Iones A. Rivera-Jimenez on behalf of DLJ Mortgage Capital, Inc. Responses due by 1/11/2018. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Related document(s) 35 ) (Rivera-Jimenez, Iones) (Entered: 12/28/2017) |
| 01/23/2018 | 37 | ORDER re 36 Motion In Compliance as to 35 Order on Motion to Substitute Party. Noted. Furthermore, ECF No. 29, 30, 31, 33 and 34 are DENIED without prejudice. Signed by Chief Judge Aida M. Delgado-Colon on 1/23/208.(wm) (Entered: 01/23/2018) |
| 04/19/2018 | 38 | MOTION to Substitute Party filed by Iones A. Rivera-Jimenez on behalf of Lime Residential, Ltd. Responses due by 5/3/2018. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Attachments: # 1 Exhibit I, # 2 Exhibit II)(Rivera-Jimenez, Iones) (Entered: 04/19/2018) |
| 04/24/2018 | 39 | MOTION to Appoint Special Master , Second MOTION to Substitute Party , MOTION |

| | | |
|---|---|---|
| | | for Execution of Judgment filed by Iones A. Rivera-Jimenez on behalf of Lime Residential, Ltd. Responses due by 5/8/2018. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Attachments: # 1 Text of Proposed Order Text of Proposed Order, # 2 Text of Proposed Order Text of Proposed Order, # 3 Exhibit I)(Rivera-Jimenez, Iones) (Entered: 04/24/2018) |
| 06/15/2018 | 40 | Second MOTION to Appoint Special Master , Second MOTION for Execution of Judgment , Second MOTION to Substitute Party filed by Iones A. Rivera-Jimenez on behalf of Lime Residential, Ltd. Responses due by 6/29/2018. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Attachments: # 1 Text of Proposed Order Text of proposed order, # 2 Text of Proposed Order Text of proposed order)(Rivera-Jimenez, Iones) (Entered: 06/15/2018) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/04/2018 16:55:34 | | | |
| **PACER Login:** | gmbankruptcy:3854511:3944975 | **Client Code:** | 38940.0002 |
| **Description:** | Docket Report | **Search Criteria:** | 3:15-cv-02680-ADC |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |